## Case No. 1,539.

### The BLENHEIM et al.

[5 Sawy. 192;[1] 6 N. Y. Wkly. Dig. 545; 10 Chi. Leg. News, 353.]

District Court, D. Oregon. July 2, 1878.

FREIGHT—DELIVERY OF—LIMITATION IN ADMIRALTY.

1. A vessel while taking on a cargo of flour by the charterer, by mistake of the mate and wharfinger took on eighty-three sacks more than was entered upon the bill of lading, or shipped on account of the charter: *Held*, that it was the duty of the master upon discharging the cargo at the port of delivery, if the owner of the eighty-three sacks of flour was not present to receive the same, to store it safely, subject to freight and charges, and notify the owner thereof, and that having failed to do so, but delivered the same to the charterer or his assigns, whereby the flour was lost to the owner, the vessel is liable for the value of the same, with interest.

2. A demand in admiralty is not necessarily barred by lapse of time, but the matter rests in the discretion of the court to be governed by the circumstances of the case considered with reference to the wants and convenience of commerce and the analogies of the local law of limitation.

[See Stillman v. The Buckeye State, Case No. 13,445.]

[In admiralty. Libel by John S. Barnard against the British bark Blenheim for a quantity of flour taken on board by mistake, and not accounted for to the libellant (Peter Iredale and others claimants). Decree for libellant.]

David Goodsell and H. H. Northrup, for libellant.

Benton Killen, for claimants.

DEADY, District Judge. This suit is brought by the libellant, John S. Bernard, to recover the sum of four hundred and fifty dollars, the alleged value of a quantity of flour shipped on the British barque Blenheim, and not delivered or accounted for. The testimony in the case is meager, and leaves some points made by counsel in doubt. But the following facts are satisfactorily established. In January, 1874, and thereafter, the libellant was engaged in the business of a wharfinger and warehouseman at Portland, Or., when and where the Blenheim received a cargo of flour from the libellant for and on account of the charterer of the vessel, to be shipped to Great Britain or the continent of Europe; that by mistake of the parties, including the mate who kept the tally, eighty-three sacks of flour, weighing ninety-eight pounds each, were shipped on said vessel in excess of the cargo furnished

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

to said charterer, and entered upon the bill of lading, which sacks of flour were delivered by the master to the charterer or his assigns at Havre, France. and thereby lost to the libellant; and that the Blenheim did not return to this port until shortly before the commencement of this suit, March 30, 1878. The fact that this excess of flour was taken on board, and discharged at Havre is distinctly admitted by the managing owner, Mr. S. Martin, in a letter to the libellant, dated December 31, 1874.

Upon this state of facts, I think, the vessel is liable as for a non-delivery of the flour. When goods are taken on board by mistake, as in this case, the law will imply a contract between the master and owner to deliver them on account of the latter at the port of destination for the remainder of the cargo, particularly where the goods so shipped are of the same kind and character as the rest of the cargo. This being so, the general rule applies. If the owner is not present at the port of delivery to receive the goods, it is the duty of the master to store them in a place of safety, subject to the lien of the vessel for freight and charges, and notify the owner. The Eddy, 5 Wall. [72 U. S.] 495.

In this case, the master of the Blenheim should have stored the flour safely at Havre on account of the libellant, and notified him of the fact, unless perhaps he chose to dispose of it on his account, and remit the proceeds, less the freight and charges, or to return the flour to him at Portland. The flour having been lost to the libellant by this neglect of a plain duty on the part of the master, the vessel is liable to the libellant for the loss.

Objection is made that this is a stale demand, and that the proof tends to show that since the date of the transaction out of which it arises the vessel has changed owners in whole or in part. But a sufficient answer to this objection is found in the fact that the Blenheim has not been in this jurisdiction since the taking away of this flour until the commencement of this suit. There is no fixed rule of limitation in the admiralty, but the matter is left to the discretion of the court, to be governed by the facts and circumstances of the case, considered with due reference to the wants and convenience of commerce, and the analogies of the local laws of limitation. Ben. Adm. §§ 574, 575. This suit would not be barred by the statute of this state, even if the vessel had remained within its jurisdiction since the cause arose, but it might be brought within six years after the right accrued. Civ. Code Or. § 6. Neither has there been any unnecessary delay on the part of the libellant in asserting his rights, from which it may be inferred that the demand was neglected or abandoned. The suit was brought as soon as it could be where the cause arose. The libellant was not bound to incur the expense

or risk of following this vessel around the world to bring suit against her. It was sufficient to do so as soon as her return to this jurisdiction permitted it to be done.

It appears from the proof that at the time of the discharge of the cargo of the Blenheim at Havre, flour was worth there not less than eight dollars per barrel. These eighty-three sacks were equivalent to forty-one and one-half barrels, and at this rate were worth three hundred and thirty-two dollars. Add to this amount legal interest on the same for three years and six months, which allows one year from the time of shipment for a sale and returns, and it makes four hundred and forty-nine dollars and forty cents, for which sum the libellant is entitled to a decree.